**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re: ) | |
| ) | |
| 11380 SMITH ROAD, LLC, ) | Case No. 18-10965 |
| EIN: 46-4766309, ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| ) | |

---

**11380 EAST SMITH RD INVESTMENTS, LLC'S, OBJECTION TO DEBTOR'S APPLICATION TO EMPLOY CBRE, INC., AS BROKERAGE FIRM FOR THE ESTATE**

---

COMES NOW 11380 East Smith RD Investments, LLC ("**Lender**"), the Debtor's prepetition secured lender, for its Objection to the Debtor's Application to Employ CBRE, Inc., as Brokerage Firm for the Estate (the "**Objection**"). In support of the Objection, Lender states as follows:

### Introduction

1. Lender objects to the relief requested in the Application on four separate bases: (a) there is inadequate disclosure about what need, if any, exists in order to hire a real estate broker to sell the property; (b) a listing period of nine (9) months is too long in the absence of any meaningful disclosure regarding the future path of this case; (c) the contract allows the broker to dispense with his fiduciary duty as being a professional of the estate; and (d) a commission of six percent (6%) is unreasonable. Accordingly, the Application should be denied.

### Background

**A.     Prepetition Loan Obligations.**

2. On October 25, 2016, the Debtor made, executed and delivered its promissory note to Lender in the principal amount of $3,000,000 (the "**Note**").

3. On October 25, 2016, in order to secure the obligations due and owing under the Note, the Debtor executed a Deed of Trust, Security Agreement, Financing Statement and Assignment of Rents and Revenues (the "**DOT**") in favor of Lender.

4. The DOT granted Lender a first-position security interest in the real property commonly known as 11380 East Smith Road, Aurora, Colorado 80010 (the "**Property**"). Lender perfected its security interest in the Property, on October 26, 2016, when it recorded a

copy of the DOT with the Clerk and Recorder of Adams County, Colorado, as Reception No. 2016000091839.

5. To further secure the obligations due and owing under the Note, Debtor executed an Assignment of Rents and Leases (the "**AOR**") in favor of lender.

6. The AOR granted a security interest to Lender in all of the "rents, issues, earnings, income, profits, benefits and advantages arising from the Property and from said Leases and all other sums due or to become due under and pursuant thereto . . ." On October 26, 2016, Lender recorded a copy of the AOR with the Clerk and Recorder of Adams County, Colorado, as Reception No. 2016000091840.

7. In connection with the loan, Debtor presented Lender with two separate leases which burdened the Property. The first lease was between the Debtor and Hi-Tec Plastics, Inc. ("**HTP**"), with a term that runs through December 31, 2018. The second lease was between the Debtor and Hi-Tec Recycling, Inc. ("**HTR**"), with a term that runs through December 31, 2018.

8. The Debtor's authorized representative, Mr. Louis Hard, is the registered agent for both HTP and HTR.

9. The Note matured by its terms on October 25, 2017, and the Debtor failed to repay the obligations due and owing thereunder according to the terms thereof.

10. Prior to the commencement of this Chapter 11 case, Lender had properly noticed a Trustee's Sale of the Property that was set for February 14, 2018 at 10:00 a.m. (the "**Trustee's Sale**").

**B.     The Debtor's Bankruptcy Case.**

11. On February 13, 2018, the day before the Trustee's Sale, the Debtor initiated this bankruptcy case when it filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code. (Docket No. 1).

12. The Debtor filed this case as a single asset real estate entity as such term is defined under Section 101(51B) of the Bankruptcy Code. (*Id*. at p. 2).

13. The Debtor's Schedule D, filed with its petition, valued the Property at $6,500,000.00. (*Id*. at p. 18).

14. The Debtor's Schedule G says that the Debtor has no executory contracts and/or unexpired leases. (*Id*. at p. 20).

15. The Debtor's Statement of Financial Affairs indicates that the Debtor's had annual gross revenues of $641,084.37 for the year 2016 and $229,240 for the year 2017. (*Id*. at p. 5).

16. The Debtor's creditors' matrix indicates that, other than the SEC and IRS, the Debtor has principally only three (3) creditors: (a) Lender; (b) Tim Henzel; and (c) Xcel Energy.

17. On February 19, 2018, the Debtor filed its Application to Employ CBRE, Inc. ("**Broker**"), as Brokerage Firm for the Estate (Docket No. 14) (the "**Application**"). Appended to the Application as <u>Exhibit A</u> was a copy of a proposed Listing Contract (the "**Contract**"), and as <u>Exhibit B</u> was the Affidavit and Fee Disclosure Statement of Broker Bill Thompson (the "**Thompson Affidavit**").

18. As of the petition date, the amount due and owing under the terms of the Note was no less than $3,521,833.33 with interest accruing *per diem* at the rate of $2,333.33.

19. As of the date of this Objection, Debtor has not offered Lender any adequate protection for the continued use of the Property during this Chapter 11 case.

## Objection

**A.  The Application Omits Important Information to Determine why the Debtor Needs to Retain the Broker, or any Circumstances Surrounding a Potential Sale of the Property, and why the Broker Needs Nine (9) Months to Sell the Property.**

20. The Application contains no information as to ***why*** it is necessary at this point to retain the Broker. *In re Comput. Learning Ctrs., Inc.*, 272 B.R. 897, 903 (Bankr. E.D. Va. 2001) (stating that, in connection with a Section 327(a) professional, a debtor must articulate reasons as to why the particular professional is necessary). Instead, the Application just states that the Debtor has entered into the Contract to provide for the sale of the Property. (Docket No. 14 at ¶ 4). There are no facts surrounding how or when a potential sale of the Property is likely to occur or on what terms, *i.e.*, through a sale motion or as part of a Chapter 11 plan. Moreover, because there is no sale motion or other similar pleading on file, interested parties do not know what type of marketing efforts or other actions the Debtor and/or Broker intend to undertake. Until the Debtor has provided greater disclosure surrounding the material details of how the potential sale of the Property fits into the broader trajectory of this case, the Application should be denied.

21. Additionally, the Contract provides that the listing period for the Property shall be through the earlier of completion of a sale of the Property or nine (9) months from mutual execution of the Contract. (Docket No. 14-1 at l. 45-48). Without any information regarding the critical details surrounding the Debtor's desire and/or proposed mechanisms to sell the Property, a period of nine (9) months is too long. Accordingly, in the absence of any facts, the Application should be denied and the Contract resubmitted with a shorter listing period, *i.e.*, no greater than 90 days from the petition date.

**B.  The Contract Allows the Broker to Violate its Fiduciary Duty to the Estate.**

22. While the "Seller Agency" box at the top of the Contract is checked, Section 4.3.1.2 of the Contract, which is also checked, provides the following: "[i]f this box is checked, Broker represents Seller as Seller's Agent and must treat the buyer as a customer, unless Broker

3

currently has or *enters into an agency or Transaction-Brokerage relationship with the buyer, in which case Broker must act as a Transaction-Broker*." (Docket No. 14-1 at l. 72-74) (emphasis added). The term Transaction-Broker is defined as:

> A transaction-broker assists the buyer or seller or both throughout a real estate transaction by performing terms of any written or oral agreement, fully informing the parties, presenting all offers and assisting the parties with any contracts, including the closing of the transaction *without being an agent or advocate for any of the parties*. A transaction-broker must use reasonable skill and care in the performance of any oral or written agreement, and must make the same disclosures as agents about all adverse material facts actually known by the transaction-broker concerning a property or a buyer's financial ability to perform the terms of a transaction and, if a residential property, whether the buyer intends to occupy the property. No written agreement is required.

(*Id*. at p. 9) (emphasis added).

23. As the Court is familiar, the Debtor is a fiduciary to its creditors. *In re DB Capital Holdings, LLC*, 454 B.R. 804, 815 (Bankr. D. Colo. 2011) ("Upon the commencement of a Chapter 11 bankruptcy case, the debtor becomes a 'debtor in possession' with a fiduciary duty to creditors and rights and obligations under federal law. . .") (quoting *Matter of Pease*, 195 B.R. 431 (Bankr. D. Neb. 1996)). Furthermore, the Debtor's fiduciary duties carryover to all professionals retained by the Debtor. *In re Gillett Holdings, Inc.*, 137 B.R. 452, 458 (Bankr. D. Colo. 1991) ("[i]nvestment bankers and financial advisors hired by the Debtor are also fiduciaries."); *In re Bellevue Place Assocs.*, 171 B.R. 615, 626 (Bankr. N.D. Ill. 1994) ("[t]he fiduciary duties and obligations of a debtor in possession carry over to professionals retained by the debtor-in-possession.").

24. The above referenced provisions of the Contract authorize the Broker at a future date to be a "Transaction-Broker" which status expressly dispenses with the Broker's fiduciary duties to the Debtor's estate by not being an agent/advocate for the Debtor/Seller. Any provisions which allow the Broker, a proposed professional of the estate, to dispense with its fiduciary duties to the estate cannot be approved. If this Broker is to be retained, the Broker must be an agent for the Debtor/Seller only.

C.    **The Broker's Proposed Commission of Six Percent (6%) is not Reasonable.**

25. As set forth above, the Debtor's Schedule A estimates the value of the Property at $6,500,000.00. Assuming solely for the purposes of this Objection that such valuation is correct, the Broker stands to make $390,000.00 upon the sale of the Property. The Application states in conclusory fashion that the commission "is reasonable and similar to those commissions being charged by other brokers for similar services." (Docket No. 14 at ¶ 7). However, there is no discussion as to how the Debtor and Broker agreed on 6% as the appropriate commission and whether such an amount would be reasonable for the work to be performed in selling the Property. Furthermore, in light of Denver's strong industrial real estate market, there is no explanation as to whether the Debtor considered other brokers to list and sell the Property for an

amount less than 6% or whether the Broker would be willing to accept less than 6%. *See* Ryan Good, *Industrial Space Can Support Evolving Retailer Needs*, Colorado Real Estate Journal, (February 5, 2018), https://crej.com/news/industrial-space-can-support-evolving-retailer-needs/ ("[l]ast year alone, the Denver metro area delivered 5.4 million square feet of new industrial space – the highest since 2001 – according to CBRE. Looking at 2018 and beyond, Denver's strong industrial and logistics market is well positioned to continue providing the type of proximity to consumers and accessibility to major transportation arteries that the retail industry needs."). Absent any disclosure on how the Debtor and Broker agreed on the 6%, the commission is unreasonable and the Application should be denied.

26. Lastly, the Contract is factually incorrect in one material respect. The Contract states that there are no "[e]xisting monetary encumbrances". (Docket No. 14-1 l. 254-55). Such statement is patently false because Lender has a validly perfected first position security interest with its DOT. Accordingly, the Contract must be amended to reflect Lender's "existing monetary encumbrance".

WHEREFORE, Lender requests that the Application be denied, and for such other and further relief this Court deems fair and reasonable under the circumstances.

Dated: March 5, 2018                                **MOYE WHITE LLP**

/s/ *Timothy M. Swanson*
Timothy M. Swanson, Colorado No. 47267
1400 16th Street, Suite 600
Denver, CO 80202
(303) 292-2900
(303) 292-4510 *facsimile*
tim.swanson@moyewhite.com
**Counsel for 11380 East Smith Rd Investments, LLC**

5

## **CERTIFICATE OF SERVICE**

I, Timothy M. Swanson, an attorney, hereby certify that on March 5, 2018, a true and correct copy of the foregoing **11380 EAST SMITH RD INVESTMENTS, LLC'S, LIMITED OBJECTION TO DEBTOR'S APPLICATION TO EMPLOY CBRE, INC., AS BROKERAGE FIRM FOR THE ESTATE** was duly served upon all parties entitled to receive electronic notice *via* the Court's CM/ECF filing system.

/s/ *Timothy M. Swanson*
Timothy M. Swanson