UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

In re:                                    )
                                          )
11380 SMITH RD LLC                        )        Case No. 18-10965 TBM
EIN 46-4766309                            )        Chapter 11
                                          )
Debtor.                                   )

---

## AMENDED DISCLOSURE STATEMENT

---

## I.  INTRODUCTION

Dated: July 11, 2018

On February 13, 2018, 11380 Smith Rd LLC ("Debtor"), filed its voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code.  On July 11, 2018, the Debtor filed its Amended Plan of Reorganization (the "Plan").

A.  REORGANIZATION AND DISCLOSURE.  Chapter 11 is the principal reorganizational Chapter of the Bankruptcy Code.  Pursuant to Chapter 11, the Debtor may reorganize its business and/or financial affairs while continuing to operate its business, retain possession of its property, or liquidate some or all of its assets to pay its creditors.  Attempts to collect pre-petition claims from the Debtor and any attempts to foreclose upon the Debtor's property are stayed during the pendency of the bankruptcy proceeding.  This Amended Disclosure Statement ("Disclosure Statement") is intended to provide the holders of claims adequate information about the Debtor and its proposed Plan so that creditors can make an informed judgment about the merits of approving the Plan.  The Plan, if confirmed by the Bankruptcy Court, will bind the Debtor and the creditors with respect to the terms and conditions set forth therein even if creditors do not vote in favor of the Plan.

11380 Smith Rd amended ds

B.     Adequate information.  "Adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, including a discussion of the potential material Federal tax consequences of the Plan to the Debtor, any successor to the Debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the Plan, but adequate information need not include such information about any other possible or proposed Plan.  In determining whether the Plan provides adequate information, the Court considers the complexity of the case, the benefit of additional information to creditors and other parties in interest and the cost of providing additional information.

An "investor typical of holders of claims or interests of the relevant class" means investors having a claim or interest of the relevant class; such a relationship with the Debtor as the holders of other claims or interests of such class generally have; and, such ability to obtain such information from sources other than the disclosure required by §1125 of the Bankruptcy Code (11 U.S.C. §1125) as holders of claims or interests in such class generally have.

C.     YOU ARE ENCOURAGED TO READ THE PLAN AND TO CONSULT WITH YOUR COUNSEL ABOUT IT.  CERTAIN CAPITALIZED TERMS USED HEREIN ARE DEFINED IN THE PLAN OR IN THE BANKRUPTCY CODE.  THE PLAN HAS NEITHER BEEN APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, AND THE COMMISSION HAS NOT RENDERED AN OPINION UPON THE ACCURACY OR ADEQUACY OF ANY STATEMENTS CONTAINED IN THE PLAN.

11380 Smith Rd amended ds

APPROVAL OF THE DISCLOSURE STATEMENT BY THE COURT AS CONTAINING ADEQUATE INFORMATION DOES NOT IMPLY COURT APPROVAL OF THE PLAN.  IN THE EVENT THE DEBTOR MODIFIES ITS PLAN BEFORE CONFIRMATION, THE PLAN AS MODIFIED SHALL BECOME THE PLAN FOR PURPOSES OF CONFIRMATION.  AS SUCH, PREVIOUS VERSIONS OF THE PLAN SHOULD BE DISREGARDED BY CREDITORS.

D.  <u>VOTING ON THE PLAN</u>.  The Debtor is proposing a Plan as a means of reorganizing its financial affairs and paying its creditors.  A vote on the Plan is important.  The Debtor can implement the Plan only if it is confirmed by the Bankruptcy Court.  The Plan can be confirmed only if, among other things, it is accepted by the holders of two-thirds in amount and more than one-half in number of the claims which actually vote on the Plan.  At least one "impaired class" must vote to accept the Plan.  In the event the requisite acceptances are not obtained from the impaired classes, the Court may nevertheless confirm the Plan if the Court finds that it is fair and equitable to the class or classes rejecting the Plan.  Under the Debtor's proposed Plan, Classes 1, 2 and 3 are impaired and therefore are entitled to vote on the Plan.  Class 4 is not impaired and therefore cannot vote on the Plan.

"Impaired" is defined by §1124 of the Bankruptcy Code.  Impaired means that Debtor's Plan alters the legal, equitable or contractual rights to which such classes or interest entitles the holder of such claims or interest.  The holders of impaired claims which are also allowed claims (as defined in Article I, ¶ 1.3 of the Plan), or the holders in those classes of disputed claims which the Bankruptcy Court has temporarily allowed for voting purposes only are entitled to vote on the Debtor's Plan.

You are not required to vote on the Plan, but only those votes actually received by Debtor's  counsel on or before 5:00 p.m. MST/MDT on the date set forth in the Court's Order or Notice accompanying this Plan will be counted either for or against the Plan.  You should either fax, mail or e-mail a completed ballot to the Debtor's counsel by 5:00 p.m. MST/MDT on the date established by the Court in its Order or Notice which accompanies this Plan.  Please fill out your ballot completely to insure that your vote with respect to the Plan is properly counted.  Ballots can be mailed, faxed or e-mailed to the Debtor's counsel at the following address, fax number, or e-mail address:

> Weinman & Associates, P.C.
> 730 17th Street, Suite 240
> Denver, CO 80202-3506
> Facsimile: (303) 572-1011
> jweinman@epitrustee.com

Ballots will be counted as long as they are received by the Debtor's counsel by 5:00 p.m. MST/MDT on the date established by the Court in its Order or Notice accompanying this Plan.

The Court will hold a hearing on confirmation of the Plan and will, among other things, determine the result of the vote on the Plan.  The Debtor will prepare a ballot report which it will present to the Court at the confirmation hearing.  The date and time of the Court's hearing on confirmation and important deadlines are set forth in the Court's Order or Notice enclosed with this Disclosure Statement and the Plan.

E.      <u>Objecting to the adequacy of the information contained in the Disclosure Statement or to confirmation of the Plan</u>.  The Court will set a deadline for filing written objections to the adequacy of the information contained in the Disclosure Statement.  If no objections are filed with the Court, the approval of the information contained in the Disclosure Statement

4

may become final.  Any objection or request to modify the information contained in the Disclosure Statement will be considered by the Court at the hearing set by the Court on the adequacy of the Disclosure Statement.

In addition to voting on the Plan, creditors may also object to confirmation of the Plan by filing and serving written objections to confirmation of the Plan as required by the Bankruptcy Rules of Procedure.  The Court has set a deadline for filing written objections in its Order or Notice which accompanies this Disclosure Statement and proposed Plan. If you wish to object to confirmation of the Debtor's Plan, you must file a written objection. Filing a ballot rejecting the Plan will not be considered an objection to confirmation of the Plan by the Court.

F.      Bar Date.  The Court will set a deadline ("Bar Date") by which creditors are to file Proofs of Claim in the Debtor's Chapter 11 bankruptcy proceeding.  The Bar Date will be set forth in the Court's Order and Notice which will be mailed to you during the pendency of the Debtor's Chapter 11 bankruptcy proceeding.  If you desire to file a Proof of Claim, it is important that you file a Proof of Claim with the Clerk of the Bankruptcy Court on or before the Bar Date or your claim may not be allowed and you may not be able to participate as a creditor in the Debtor's Chapter 11 bankruptcy proceeding.  If you agree with the way the Debtor has listed your claim on its bankruptcy Schedules, and your claim is not listed as "disputed", "contingent", or "unliquidated", it is not necessary for you to file a Proof of Claim in order to have your claim allowed for purposes of voting on the Plan and receiving payment or other treatment of your claim under a confirmed Plan of Reorganization.

## II.  PRE-BANKRUPTCY HISTORY OF THE DEBTOR

Debtor purchased the Smith Rd. property in January 2014 for a purchase price of $1.8 million. The purchase price included the acquisition of another building known as the Moline building. Moline was contaminated and required remediation.

After remediation, Moline was sold in 2016 for $3.9 million. The proceeds were used to pay debt and residual funds were advanced to Hi-Tec Plastics, Inc. and Hi-Tec Recycling, Inc.(hereafter collectively "Hi-Tec") to support faltering businesses owned by Louis Hard, the owner of Debtor. Mr. Hard had stepped away from these businesses around 2014 and his general manager ran them into the ground through mismanagement. Consequently, what had for 30 years been very successful businesses, were on the precipice of failure. Indeed, because of the long history of profitability of the businesses, Mr. Hard was comfortable pouring millions of dollars of additional capital into them in the hope of returning them to profitability.

Indeed, since some of the capital investment in Hi-Tec came from Debtor, these outstanding loans remain on Debtor's balance sheet in an amount approaching $5 million. They are, unfortunately, uncollectible.

After the Moline building was sold, Smith Rd. remained Debtor's primary asset in addition to an insurance claim and some miscellaneous accounts receivable stemming from a tenant of Moline and Hi-Tec. Hi-Tec paid rent until mid 2017 when it became unable to do so. Indeed, in late 2017, the Hi-Tec Plastics business was sold and substantially all of its assets which were not included in the sale, were liquidated separately. All sale proceeds went to bank and trade debt. Some amounts still due under the sale are subject to the

11380 Smith Rd amended ds

6

security interest of Hi-Tec's lender. Accordingly, pursuit of Hi-Tec's lease default would be as futile as pursuing it on the loans it owes to Debtor. Moreover, given the value of the Smith Rd building, it is unnecessary to chase Hi-Tec even were it not judgement proof, as creditors will be paid in full from a sale or refinance of the building.

Debtor considered selling its property pre-petition although it had not been listed for sale. It received an unsolicited offer for $5.5 million but could neither close the sale in time to avoid the pending foreclosure on its property commenced by 11380 East Smith Rd Investments, LLC, nor did it believe the value of the property to be less than $6.2 -7.0 million. In fact, Debtor believes that the property is worth at least the $6.5 million and has sought to employ CBRE Richard Ellis to sell the property for that price. CBRE's broker, Bill Thompson, supports this valuation.

Debtor's plan is quite simple: list and sell or refinance the Smith Road Real Property, pursue its legal claims, and pay all creditors in full from the proceeds.

## III. <u>EXPECTED POST-CONFIRMATION OPERATION OF REORGANIZED DEBTOR</u>

The Debtor will remain in possession of its Assets and will administer its confirmed Chapter 11 Plan to repay creditors pursuant to the terms of the Plan. The Debtor will sell its Real Property to pay allowed creditor claims and administrative expenses. Louis Hard will be appointed to implement the terms of the Plan following confirmation. He will not be paid for his services.

## IV. <u>DESCRIPTION OF DEBTOR'S REAL AND PERSONAL PROPERTY ASSETS</u>

As of the date of the filing of the bankruptcy petition, the Debtor's assets consist of real and personal property assets.

11380 Smith Rd amended ds

7

The Debtor's Real Property consists of its ownership interest in real property located at 11380 East Smith Road, Aurora, CO 80010. The Debtor estimates the value of the Real Property at $6,500,000 and has listed it for sale with CBRE real estate brokers at that price. Personal property includes: accounts receivable (listed at $135,752.22); and legal claims against Owners Insurance Company (value of legal claims is uncertain at this time).

## V. STATUS DURING CHAPTER 11 BANKRUPTCY PROCEEDING PENDING PRE-PETITION AND POST-PETITION LITIGATION AND PREFERENCE AND/OR FRAUDULENT CONVEYANCE CLAIMS

A.      STATUS DURING CHAPTER 11.  The Debtor has been managing its financial affairs and operating its business under Chapter 11 as Debtor-in-Possession since it filed for bankruptcy relief.

The Debtor, through its representative, attended an Initial Debtor Interview (IDI) conducted by the Office of the U.S. Trustee, attended a §341 Meeting of Creditors, and attended a status and scheduling conference conducted by the Bankruptcy Court.

The U.S. Trustee has not appointed a creditors' committee in this Chapter 11 bankruptcy proceeding.

B.      PRE-PETITION LITIGATION.  Prior to the Debtor filing its bankruptcy petition, the Debtor was involved in pre-petition federal court litigation in the United States District Court for the District of Colorado, identified as *Owners Insurance Company, Plaintiff and Counterclaim Defendant v. 11380 East Smith Road, LLC and 355 Moline, LLC, Defendants and Counterclaim Plaintiffs*, Case No. 2017-CV-00346. The Bankruptcy Court has granted the Debtor relief from the automatic stay to allow this matter to proceed in federal district court in Colorado. Secured Creditor 11380 East Smith Rd Investments, LLC commenced

a foreclosure proceeding which has been stayed by the Debtor filing its Chapter 11 proceeding.

C.    <u>POST-PETITION</u>.  Since the filing of its bankruptcy petition, the Debtor has been involved in the following litigation, contested and non-contested matters and hearings before the Bankruptcy Court:

1.    The Debtor, through its representative, attended a Court ordered status and scheduling conference as well as a Section 341 Meeting of Creditors.

2.    The Debtor has obtained authority to employ the law firm of Brown Dunning Walker, PC to represent it as special counsel in its Chapter 11 proceeding.

3.    The Debtor sought authority to employ CBRE, Inc. as real estate brokers to sell its Real Property. 11380 East Smith Rd Investments, LLC objected to its employment but the Court ultimately approved such employment.

4.    The Debtor has obtained authority to employ Merlin Law Group, P.A. to represent it in the U.S. District Court for the District of Colorado Proceeding.

5.    The Debtor has obtained authority to employ Springer & Steinberg PC to represent it in the U.S. District Court for the District of Colorado Proceeding.

6.    The Debtor filed a Motion for Relief From the Automatic Stay to allow the U.S. District Court for the District of Colorado Proceeding to proceed, which the Court has granted.

7.    Secured Creditor 11380 East Smith Rd Investments, LLC filed a Motion for Relief From Stay to allow its foreclosure proceeding to continue and a Motion to Dismiss the Debtor's Chapter 11 case. The Debtor filed responses to both Motions.

8.      The Debtor and 11380 East Smith Rd Investments, LLC filed a Joint Motion to approve a Stipulated Agreement to settle their disputes. The Court approved the Stipulated Agreement on June 29, 2018.

D.      <u>PREFERENCE AND/OR FRAUDULENT CONVEYANCE CLAIMS</u>.  As of the date of this Plan, the Debtor knows of no potential preference (11 U.S.C. §547) and/or fraudulent conveyance (11 U.S.C. §548) claims which it would be entitled to assert against any entity, or for which it would be economically beneficial to do so.  The Debtor may continue to investigate such claims and, if appropriate, may commence appropriate legal proceedings to pursue such claims.  In the event the Debtor commences any such legal proceedings and receive an award of damages arising as a result of such legal proceedings, the Debtor will utilize such net proceeds to pay allowed Chapter 11 administrative expenses, allowed unsecured priority claims, or allowed unsecured claims as may be appropriate under the Debtor's Plan.

## VI.  <u>EFFECTIVE DATE</u>

The "Effective Date" is defined in the Plan to mean the Closing Date, the date that the sale or refinance of the Debtor's Real Property closes.

## VII.  <u>CLASSIFICATION OF CREDITORS' CLAIMS AND EQUITABLE INTERESTS AND IMPAIRMENT OF CREDITORS' CLAIMS AND EQUITABLE INTERESTS</u>

A.      CLASSIFICATION OF CREDITORS' CLAIMS AND EQUITABLE INTERESTS AND IMPAIRMENT OF CREDITORS' CLAIMS AND EQUITABLE INTERESTS.

(1)     <u>Classification</u>.  Pursuant to the requirements of 11 U.S.C. §1123 of the Bankruptcy Code, the Debtor has classified the claims of its creditors under its Plan. The Debtor has made this classification pursuant to the requirements of the

Bankruptcy Code.  Each class of claims which has been established under the Plan consists of claims which are substantially similar and with respect to each claim contained in each class, the Plan provides for the same treatment for each class or interest of  each particular class unless the holder of a particular claim or interest agrees to a less favorable treatment of its particular claim or interest.

(2)      Impairment.  As required pursuant to 11 U.S.C. §1123 of the Bankruptcy Code, the Debtor has identified in its Plan those classes of claimants which are impaired under the Plan.

B.      CREDITOR CLAIMS AND EQUITABLE INTERESTS IN THE Debtor ARE CLASSIFIED AND IMPAIRED IN THE PLAN AS FOLLOWS:

(1)      Class 1 consists of the allowed secured claim of the Adams County Colorado Treasurer's Office secured by a statutory lien on the Debtor's Real Property.  Class 1 is impaired under the Plan and can vote on the Plan.

(2)      Class 2 consists of the allowed secured claim of 11380 East Smith Rd Investments, LLC secured by a lien on the Debtor's Real Property.  Class 2 is impaired under the Plan and can vote on the Plan.

(3)      Class 3 consists of the holders of allowed general unsecured claims. Class 3 is impaired under the Plan and can vote on the Plan.

(4)      Class 4 consists of the holder of an equitable interest in the Debtor.  Class 4 is not impaired under the Plan and cannot vote on the Plan.

## VIII.  TREATMENT OF CLASSES OF CREDITOR CLAIMS AND EQUITABLE INTEREST UNDER THE DEBTOR'S PLAN

Provision for payment or treatment of creditor classes and equitable interest under the Plan is set forth below.

(1)     Class 1.  Adams County Colorado Treasurer's Office.  The Class 1 creditor's claim is impaired under the Plan. The holder of an allowed secured claim in Class 1 shall be paid the allowed amount of its secured claim plus appropriate statutory interest from the Net Proceeds from the sale or refinance of the Debtor's Real Property on the Effective Date. The Class 1 creditor is owed $56,752.00 plus accrued interest. The holder of the allowed secured claim in Class 1 shall retain its lien(s) to the same extent and in the same priority as its pre-petition lien(s) pending payment in full of its allowed secured claims. To the extent that the secured claim of the Class 1 creditor is not paid in full, such unpaid amount shall be allowed as an unsecured claim and paid as provided for in Class 3 of the Plan. Upon payment in full, the lien(s) of the Class 1 creditor shall be released.

(2)     Class 2.  11380 East Smith Rd Investments, LLC.  The Class 2 creditor's claim is impaired under the Plan. The holder of the allowed secured claim in Class 2 will be paid from the Net Proceeds from the sale or refinance of the Debtor's Real Property on the Effective Date pursuant to the terms of the Stipulated Agreement entered into between the Debtor and the Class 2 creditor, and approved by the Bankruptcy Court. The Class 2 creditor has filed a Proof of Claim in the amount of $3,531,638.00. The terms of the Stipulated Agreement are incorporated into and are made a part of the Plan. The Stipulated Agreement is attached to the Plan as Exhibit "1". The salient terms of the Stipulated Agreement are as follows:

(1)    The Debtor shall have until January 1, 2019 to obtain a Bankruptcy Court Order approving the sale or refinance of the Debtor's Real Property;

(2)    The Class 2 creditor's secured claim is allowed in the amount of $3,577,124.83;

(3)    The Class 2 creditor's claim shall accrue interest at the rate of 24% on the principal amount of $3 million from the Petition Date to the earlier of the date of the sale or refinance of the Debtor's Real Property or January 1, 2019;

(4)    Post-Petition fees, costs and charges authorized under the loan agreement will be included in the Class 2 creditor's claim;

(5)    If the Debtor is unable to sell or refinance its Real Property by January 1, 2019, the Class 2 creditor will be allowed to accrue additional interest at the rate of 28% retroactive to the Petition Date; and,

(6)    The Class 2 creditor will be granted relief from stay to proceed with its foreclosure action if the Debtor is unable to sell or refinance its Real Property by January 1, 2019.

The above represents a summary of the terms of the Stipulated Agreement. Creditors and parties in interest should review the Stipulated Agreement in its entirety for a complete understanding of the settlement between the parties.

To the extent that any allowed secured claim of the Class 2 creditor is not paid in full, such unpaid amount shall be allowed as an unsecured claim and paid as provided for in

11380 Smith Rd amended ds

13

Class 3 of the Plan. Upon payment in full, the lien securing the Class 2 claim shall be released.

(3)   Class 3.  Unsecured Claims.  Class 3 is impaired under the Plan. Class 3 consists of the Allowed Unsecured Claims of the Debtor's Unsecured Creditors.  The allowed unsecured claims of the Class 3 creditors shall be paid in full plus Unsecured Interest from the Net Proceeds from the sale or refinance of the Debtor's Real Property, after the Debtor's creditors with allowed secured claims in Classes 1 and 2 are paid in full. Any disputed Unsecured Claims of the Class 3 creditors shall be paid in full with Unsecured Interest pursuant to the terms of the Plan when such Disputed Unsecured Claims become Allowed Unsecured Claims as a result of a Final Order entered by the Court allowing such unsecured claims.

Class 3 Unsecured Claims include the following:

a.   Tim Henzel – $1,200,000.00 (not disputed);

b.   Xcel Energy – $718.56 (not disputed); and,

c.   Owners Insurance Company – Unknown amount (disputed and contingent).

(4)   Class 4. Class 4 is not impaired under the Plan. The holder of an equitable interest in the Debtor shall retain such interest in the Debtor to the same extent as his pre-petition equitable interest in the Debtor. the holder of such equitable interest shall not be paid until the holders of allowed administrative expenses, allowed secured claims, and allowed unsecured claims are paid in full as provided for in this Plan.

### IX.  PAYMENT OF UNCLASSIFIED ALLOWED CHAPTER 11 ADMINISTRATIVE EXPENSES AND ALLOWED UNSECURED PRIORITY CLAIMS

11380 Smith Rd amended ds

14

Payment of allowed Chapter 11 Administrative Expenses and allowed Unsecured Priority Claims not classified under the Plan will be paid as follows under the Debtor's proposed Plan:

<u>Administrative Expenses</u>.  Chapter 11 Administrative Expenses are identified as follows:

(a)     Counsel (Weinman & Associates, P.C.) employed to represent the Debtor in the within bankruptcy proceeding;

(b)     Special Counsel (Brown Dunning Walker, PC) employed to represent the Debtor as special counsel;

(c)     Special Counsel (Merlin Law Group, P.A.) employed to represent the Debtor as special counsel in the U.S. District Court for the District of Colorado Proceeding;

(d)     Special Counsel (Springer & Steinberg PC) employed to represent the Debtor as special counsel in the U.S. District Court for the District of Colorado Proceeding;

(e)     Real Estate Broker (CBRE, Inc.) employed to sell the Debtor's Real Property;

(f)     Fees required to be paid to the U.S. Trustee pursuant to 28 U.S.C. §1930; and,

(g)     Post-petition fees and expenses, including taxes, incurred by the Debtor's bankruptcy estate in the ordinary operation and management of the Debtor's business and/or financial affairs.

The holders of an allowed expenses in Paragraphs (a) through (d) shall submit their requests for payment to the Court and the Debtor shall pay such Allowed Chapter 11

Administrative Expenses only upon approval by and in the amount allowed by the Court. The Debtor believes that it will owe Weinman & Associates, P.C. approximately $15,000 for attorneys' fees for services performed through the conclusion of the Chapter 11 case after application of the retainer.  The Debtor believes that it will owe Brown Dunning Walker, PC approximately $15,000 for attorneys fees for services performed through the conclusion of the Chapter 11 case. The Debtor believes that it will owe Merlin Law Group, P.A. approximately $0 for attorneys fees for services performed through the conclusion of the Chapter 11 case. This representation is on a contingency basis. The Debtor believes that it will owe Springer & Steinberg PC approximately $0 for attorneys fees for services performed through the conclusion of the Chapter 11 case. This representation is on a contingency basis.

The holders of allowed expenses in Paragraphs (a) through (d) above shall be paid the allowed amount of their Chapter 11 Administrative Expenses on the Effective Date of the Plan provided the Court has entered final, non-appealable orders allowing such Administrative Expenses or as may be otherwise agreed to by these Administrative Claimants and the Debtor.  The Debtor anticipates entering into an agreement with its attorneys to pay their allowed Chapter 11 expenses over time following confirmation of its Plan, if necessary.  Weinman & Associates, P.C. is currently holding a balance of $10,917 in its Coltaf account which it will apply to the balance of its allowed fees and expenses.

CBRE, Inc. will be paid at the closing of the sale or refinance of the Debtor's Real Property (real estate commission estimated to be approximately $325,000).

U.S. Trustee fees required to be paid pursuant to 28 U.S.C. §1930 identified in Paragraph (f) above shall be timely paid until such time as the within Chapter 11 case is

dismissed, converted or closed by order of the Bankruptcy Court.  The Debtor estimates that it may owe the U.S. Trustee $13,000 for unpaid quarterly fees calculated based upon the disbursements to its administrative claimants, secured, and unsecured creditors with allowed claims should the property sell or be refinanced prior to the Debtor's Chapter 11 proceeding being closed.

Fees and other expenses identified in Paragraph (g) above shall be paid pursuant to the terms of any agreement and/or in the ordinary course of the Debtor's business and/or financial affairs according to ordinary business terms.  Any unpaid post-petition taxes owing by the Debtor's bankruptcy estate will be paid in full on or before the Effective Date of the Plan.

Allowed Unsecured Priority Claims of Taxing Authorities

Any Allowed Unsecured Priority Claim of any taxing authority will be paid in full to such taxing authority with an appropriate rate of interest in monthly payments of principal and interest amortized over no longer than 48 months with the first payment of principal and interest due on the Effective Date and continuing monthly thereafter until any such claim is paid in full. The Debtor knows of no such unsecured priority claim.

## X.  MEANS FOR IMPLEMENTATION OF THE PLAN

Upon confirmation of the Plan, the Reorganized Debtor will implement its Plan as follows:

(a)     Upon entry of the Confirmation Order, title in the Debtor's Assets, except as otherwise provided for herein, will be transferred to the Reorganized Debtor. The Debtor appoints Louis Hard to implement the provisions of the Confirmed Plan to pay creditor claims as provided for in the Plan and to

11380 Smith Rd amended ds

17

pursue the Debtor's legal claims in the U.S. District Court case. Mr. Hard will not be paid for his services.

(b)     The Debtor will pay the holders of allowed Chapter 11 Administrative Expenses on the Effective Date of the Plan unless otherwise agreed to between these parties and the Debtor.

(c)     The Reorganized Debtor will pay quarterly fees to the U.S. Trustee as required by the Bankruptcy Code until its case is closed, converted to a Chapter 7 case or dismissed by the Bankruptcy Court.

(d)     The Debtor will sell its Real Property to fund its Plan.

(e)     The Debtor will continue to properly insure and maintain its Assets.

(f)     Objections to Claims:

(1)     The Debtor shall object, when appropriate to any administrative expense, secured or unsecured claim; and

(2)     The Debtor shall bring any preference or fraudulent conveyance claims as appropriate.

(3)     The Debtor will review all Proofs of Claim filed in its case and may or may not object to the allowability of such claims.

(4)     The Debtor will pursue its claims against Owners Insurance Company.

(g)     Payment of Allowed Claims and Administrative Expenses Under the Plan. The Reorganized Debtor shall make payments to creditors and administrative expense claimants as provided for under the terms of the within Plan. Payments under the Plan shall be made by check and shall be mailed to each creditor and/or administrative expense claimant with an allowed claim

at the address set forth in the Debtor's Statements and Schedules filed with the Court or as set forth in any Proof of Claim, other pleading or change of address notification, etc. filed with the Court.

(h)    Unclaimed Distributions.  For a period of one year following the date a payment is due under the within Plan, the Reorganized Debtor shall retain in a reserve account for issuance any unclaimed distributions for the benefit of the holders of allowed claims and/or administrative expenses which have failed to claim such distributions.  Following the one year period after such distributions are due, the holders of allowed claims or allowed administrative expenses theretofore entitled to such distributions held in such reserve account shall cease to be entitled thereto and thereupon such unclaimed distributions shall become the property of the Debtor.

## XI.  UNEXPIRED EXECUTORY CONTRACTS AND LEASES

Unexpired Executory Contracts and Leases:

(a)    The following unexpired executory contracts and/or leases shall be assumed by the Debtor upon confirmation of the Debtor's Plan unless previously assumed prior to confirmation of the Plan: None.

(b)    All unexpired executory contracts and/or leases of the Debtor neither assumed pursuant to the Plan nor pursuant to an order of the Court prior to confirmation of the Plan shall be deemed to have been rejected upon confirmation of the Plan.  These unexpired executory contracts and/or leases are identified as follows: None.

11380 Smith Rd amended ds

19

## XII.  MISCELLANEOUS PROVISIONS OF THE Debtor's PLAN

Procedures for Resolving Contested Matters:

    (a)    The Reorganized Debtor's objections to claims shall be filed with the Court and shall be served on the holder of each of the claims to which objections are filed by no later than 180 days after the Effective Date. The Reorganized Debtor shall litigate to judgment, settle or withdraw objections to all such Disputed Claims; and

    (b)    No payments or distributions shall be made under the Confirmed Plan with respect to all or any portion of a Disputed Claim or Administrative Expense unless and until all objections to such Disputed Claim or Administrative Expense have been determined by Final Order of the Court.  Payments and distributions to holders of Disputed Claims or Administrative Expenses under the Confirmed Plan, to the extent such become Allowed Claims or Administrative Expenses, shall be made in accordance with the provisions of this Plan.

Compromise and Settlement of Claims and/or Disputes:  The Reorganized Debtor shall be authorized to compromise and settle any claim and/or dispute which it may have against any entity or which may have been brought by any entity against the Debtor.  Any such compromise or settlement shall be subject to approval by the Bankruptcy Court after notice and opportunity for hearing as provided for pursuant to Rule 9013 of the Local Rules of Bankruptcy Procedure for the United States Bankruptcy Court for the District of Colorado.

Provisions for Execution and Supervision of the Plan:  Retention of Jurisdiction:

The Court shall retain and have exclusive jurisdiction over the Chapter 11 case for the following purposes to the extent authorized by the Bankruptcy Code ("Code"):

(1)     To determine any and all objections to the allowance of claims;

(2)     To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Code or the Plan;

(3)     To determine any applications pending on the Effective Date for the rejection or assumption of executory contracts or unexpired leases for the assumption and assignment, as the case may be, of those executory contracts or unexpired leases to which the Debtor is a part or with respect to which the Debtor may be liable, and to hear and determine, and if need be, to liquidate any and all claims arising therefrom;

(4)     To determine any and all applications, adversary proceedings and contested or litigated matters that may be pending on the Effective Date;

(5)     To consider any modifications of the Plan, remedy any defect or omission or reconcile any inconsistency in any Order of the Bankruptcy Court, including the Confirmation Order;

(6)     To determine all controversies, suits and disputes that may arise in connection with or interpretation, enforcement or consummation of the Plan;

11380 Smith Rd amended ds

21

(7)    To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor's Estate;

(8)    To resolve any pending disputes regarding the Debtor's interest in its Assets;

(9)    To issue orders in aid of execution of the Plan to the extent authorized by 11 U.S.C. §1142 of the Code; and

(10)    To determine such other matters as may be set forth in the Confirmation Order or as may arise in connection with the Plan or the Confirmation Order.

The Plan may be amended by the Debtor and/or the Reorganized Debtor before or after the Confirmation Date as provided in 11 U.S.C. §1127 of the Code.

Payment of Fees Pursuant to 11 U.S.C. §1129(12):  All fees required to be paid by 28 U.S.C. §1930 will be paid as required therein until such time as the within Chapter 11 case is dismissed, converted or closed by order of the Bankruptcy Court.  The Reorganized Debtor shall file quarterly post-confirmation reports until the case is closed.

Modification of Payment Terms:  The treatment of any Allowed Claim may be modified or reduced at any time after the Confirmation Date upon the consent of the creditor whose Allowed Claim treatment is being modified.

Retention of Liens:  Except as may be otherwise provided for in this Plan, creditors whose claims are secured by lien(s) against the Debtor's Assets or otherwise claim an interest in such Assets shall retain such liens to the extent of its allowed secured claims and in the same priority as its pre-petition liens or, shall retain its interest in such Assets to the same extent and in the same priority as its pre-petition interests in such Assets.

Discharge of Debtor:  Upon the entry of a discharge of the Debtor, all creditors and holders of interests shall be precluded from asserting against the Debtor and its Assets, any other or future claim or interest based on any act or omission, transaction or other activity of any kind that occurred prior to the Effective Date.

Debtor's Assets:  Except as provided for in the Plan or in the Confirmation Order, upon Confirmation of the Plan, the Reorganized Debtor shall be vested with full ownership of and dominion over its Assets free and clear of all claims, liens, charges and other interests of creditors arising prior to the filing of the bankruptcy petition and except as otherwise provided in the Plan.  Upon confirmation of the within Plan, the Reorganized Debtor may manage its financial affairs free of any restrictions of the Bankruptcy Code, the Bankruptcy Court or the United States Trustee except as otherwise provided in the Plan.

Final Report: The Debtor will file its Final Report and seek to obtain a Final Decree administratively closing its Chapter 11 proceeding no later than 180 days after entry of the Confirmation Order unless not otherwise able to do so. The Reorganized Debtor will make quarterly post-confirmation reports to the Court and the U.S. Trustee until such time as the Final Decree is entered by the Court.

Default:  In the event of a default by the Reorganized Debtor with respect to payments to creditors under its Plan, such creditors shall be entitled to take action to collect the full amount of their debt as provided for in the Confirmed Plan with whatever collection remedies it normally would have available when payments to such creditors are not made as scheduled were this case not in bankruptcy.  The creditors shall give the Reorganized Debtor written notice of any default and the Reorganized Debtor shall have ten (10)

calendar days to cure such default.  Any failure to act on any default or acceptance of late payments will not act as a waiver by the creditor to act on further defaults.

## XIII.  RISK FACTORS

Several factors could adversely affect the Debtor following confirmation which in turn could impact the Debtor's performance under its Plan.  These factors may include the following:

(1)     The Bankruptcy Court may deny confirmation of the proposed Plan.

(2)     The Debtor's Real Property may not sell or sell at a price sufficient to fund its Plan.

(3)     The Debtor may not obtain an order authorizing it to sell or refinance its Real Property by January 1, 2019. If this occurs, the secured creditor will be granted relief from stay to pursue its foreclosure proceeding.

## XIV.  EFFECT OF CONFIRMATION OF THE PLAN ON Debtor AND CREDITORS

The terms of the confirmed Plan will bind the Reorganized Debtor and all of its creditors with respect to the re-payment of claims provided for in the Plan whether or not the holders of such claims vote to accept the Plan.

## XV.  COMPARISON OF PLAN TO LIQUIDATION UNDER CHAPTER 7 OF THE BANKRUPTCY CODE

The Debtor projects that under its Plan, the Debtor's general unsecured creditors (with allowed unsecured claims) in Class 3 will realize a return of 100% of their allowed unsecured claims, with interest.  The Debtor estimates that liquidation under Chapter 7 of the Bankruptcy Code would result in 100% payment to general unsecured creditors.

Under Chapter 7 of the Bankruptcy Code, a trustee would be appointed to liquidate Debtor's Assets.  The Debtor believes that all of its secured creditors, which have liens on its Real Property, would be paid in full.  The Debtor believes that there would be sufficient Assets to pay Chapter 7 administrative expenses and allowed Chapter 11 administrative expenses as well as unsecured claims in full.  However, the Debtor believes that if its case is converted to Chapter 7, there would be delay before unsecured creditors would be paid.  This delay would occur because a Chapter 7 Trustee would be appointed to administer the Debtor's estate.  Additionally, the Debtor will object to any conversion of its case.

The Debtor's Plan provides for payment in full to unsecured creditors with allowed unsecured claims with interest.  Unsecured creditors will receive no more on their allowed unsecured claims if this case is converted than they will receive under the Debtor's Plan.

## XVI.  BEST INTEREST OF CREDITORS

The Bankruptcy Code provides that in order to confirm its Plan of Reorganization, the Debtor must satisfy the "best interest of creditors test".  Simply stated, this test requires that each holder of an impaired claim or interest must either vote to accept Debtor's  Plan or receive what such holder would receive in a hypothetical Chapter 7 liquidation under the Bankruptcy Code.

Debtor's  proposed Plan meets this requirement of the Bankruptcy Code since each creditor of the Debtor will receive at least as much, if not more (allowed secured claimants projected to receive 100% amount of allowed secured claim with interest, general unsecured creditors projected to receive 100% of claims with interest) than they would receive in a Chapter 7 liquidation case (where unsecured creditors are projected to receive 100% on allowed unsecured claims).

## XVII.  CRAMDOWN UNDER THE PLAN

If an impaired class does not accept the Plan, the Plan can be "crammed down" or forced on such class upon a showing that the Plan is "fair and equitable".  The concept of cramdown of Debtor's  Plan is best summarized as follows:  If a holder of a secured claim objects to confirmation of the Plan, the Plan may be confirmed over such objection if: (1) the creditor retains the lien on the collateral to the extent of the value of the collateral and (2) the creditor is paid with interest over the life of the Plan the amount of the allowed secured claim.  If an unsecured creditor objects to the Plan, the Plan may be confirmed over that objection if: (1)  the unsecured creditor is receiving under the Plan at least what it would receive in a Chapter 7 liquidation, and (2) the holders of any claims or interest junior to the unsecured creditor (i.e., the equitable interest in the Debtor), will receive nothing until unsecured creditors are paid in full.  This rule is known as the "absolute priority rule" in bankruptcy.  It is the opinion of Debtor that with respect to its secured creditors, its proposed Plan is fair and equitable since such creditors will retain their security interests securing the allowed amount of their claims and will be paid the allowed amount of their secured claims with interest over the life of its Plan.  With respect to Debtor's unsecured creditors, the Debtor believes that it will meet the fair and equitable test because the Plan does not violate the absolute priority rule.  The Debtor's Plan provides that unsecured creditors will receive 100% repayment on its allowed unsecured claims plus interest.

## XVIII.  FEDERAL TAX CONSEQUENCES OF THE CONFIRMED PLAN

The Debtor knows of no adverse federal tax consequences which will occur upon confirmation of the Debtor's Plan.  However, creditors should consult with its own tax advisor concerning the effect of confirmation of the Plan on its individual circumstances.

## XIX.  RECOMMENDATION

The Debtor urges you to complete and sign the enclosed ballot, and vote in favor of its Plan before the deadline established by the Court in its Order or Notice which is enclosed with the Plan.

DEBTOR-IN-POSSESSION
11380 SMITH RD LLC


 /s/ *Louis Hard*
Manager/Member


Respectfully submitted,

WEINMAN & ASSOCIATES, P.C.


By: /s/ Jeffrey A. Weinman
      Jeffrey A. Weinman, #7605
      730 17th Street, Suite 240
      Denver, CO 80202-3506
      Telephone: (303) 572-1010
      Facsimile: (303) 572-1011
      jweinman@weinmanpc.com
*Counsel for Debtor-in-Possession*
*11380 Smith Rd LLC*

11380 Smith Rd amended ds